**AMERICAN BUS LINES, INC., by Philip H. Grimwood, Administrator of the Estate of Carl L. Hicken, Deceased, Plaintiff,**

**David Chester Banning and Margaret R. Banning, Interveners,**

**Mary Charlene Grant, as Natural Mother of Pamela Jo Grant, Deceased, Dan Grant, a Minor, by his Natural Mother and Next Friend, Mary Charlene Grant, and Mary Charlene Grant, Interveners,**

**v.**

**AMERICAN SURETY COMPANY OF NEW YORK, a Corporation, Defendant.**

**Civ. A. No. 8632.**

United States District Court
D. Colorado.

Feb. 16, 1965.

J. Bayard Young, and Joseph N. Lilly, Denver, Colo., for plaintiff.

William Rann Newcomb, and Jack Levine, Denver, Colo., for interveners Banning.

Kenneth N. Kripke, and Charles A. Friedman, Denver, Colo., for interveners Grant.

Lawrence A. Long, and John D. Ward, Denver, Colo., for defendant.

DOYLE, District Judge.

This matter was tried to the Court and is here disposed of in a memorandum opinion which contains findings of fact and conclusion of law on the areas which are considered significant. Thus, formal findings are deemed unnecessary and are hereby dispensed with.

The action seeks a declaratory judgment as to liability insurance coverage in connection with a motor vehicle collision which occurred on March 26, 1964. The place of the collision was West Sixth Avenue (U. S. Highway No. 6) at Indiana Avenue, in Jefferson County, Colorado. The participants were a bus of the American Bus Lines and a truck which belonged to the State of Colorado, Highway Department. The collision occurred when Carl L. Hicken, who presumably had been proceeding west on Highway No. 6 (a four-lane, divided travel highway), turned south at Indiana Avenue and moved into the path of the bus which had been moving east on the opposite, or south division of the highway. The impact was extremely heavy, killing the driver of the truck, Hicken, whose interests are placed in issue herein by the administrator of his estate, the plaintiff in these proceedings.

The question is whether, at the particular time of the accident, Hicken's use of the highway department vehicle was within the scope of the liability coverage provided for in the policy.

Hicken, during his life, was a senior maintenance man for the Colorado Highway Department and was assigned to an area on the west side of Berthoud Pass (over the Continental Divide), approxi-

mately sixty miles west of Denver. He had a few men and some vehicles under his control. On the day in question he was directed to take a dump truck to the State Shops in Denver for the purpose of checking its two-way radio, and to have it there at eight o'clock a. m., on March 26, 1964.

Hicken left early in the morning, arriving in Denver before seven o'clock a. m. Before leaving, he gave instructions to the employees with whom he worked and told them that he expected to return that evening. In Denver, Hicken went to the home of his parents and ate breakfast with them. Thereafter, he reported to the Highway Shops and remained there until the radio work was completed shortly before noon. At two o'clock p. m., he went to the home of a friend, Maxine Hurst, and remained there until evening. Maxine Hurst testified that he was very tired and that he rested in her home for two hours, but that he was not intoxicated. According to Miss Hurst he did drink a beer before dinner. This was corroborated by Helen C. Knight, a neighbor of Maxine Hurst.

Hicken left immediately after dinner, stating that he was going to work "up on the hill." It was explained that he meant that he was returning to Berthoud Pass. It was very soon after leaving the Hurst apartment, which was in the general vicinity of West Sixth Avenue and Indiana, that the collision occurred.

West Sixth Avenue, on which Hicken was traveling just before the accident, is an artërial highway and is a natural route to the mountain area west of Denver and to Berthoud Pass, Hicken's place of work. It will never be known why he turned off Sixth Avenue at Indiana since this road became a dead-end on the south side of the east-west highway. There is, however, an east-west service road here and this connects with Highway 40 which intersects Highway 6 a short distance west of Indiana Avenue. At the west terminal of the service road and across Highway 40 is a Highway Department station. It is probable that Hicken intended to stop there, although it was uncertain whether there was a man on duty at the time. In any event, it would appear likely that he was not deviating from his westward course since the mentioned service road intersected Highway 40 which Hicken would have traveled to return to his place of work. Therefore, although Hicken was some hours behind schedule it can not be said that at the time of the accident there was any space deviation since he was traveling the very highway which would have returned him to the job.

There is evidence that Hicken had been drinking over and above the two beers testified to by the witnesses Hurst and Knight. This appeared from the autopsy which disclosed a blood alcohol of .250.

The public liability policy here in question which was issued by the American Surety Company of New York covered personal injuries, death and property damage occasioned by the use of state vehicles by employees of Colorado. The specific clause with which we are here concerned provides "and with the permission of the State of Colorado."

Defendant has called attention to the fact that the statute which authorizes the purchase of the insurance, C.R.S. '63, 72–16–1, allows the State Purchasing Agent to obtain the coverage for the purpose of insuring officers, employees and agents against liability "for injuries or damages resulting from their negligence or other tortious conduct during the course of their service or employment." From this it is argued that "scope of employment" rather than "permissive use" is the proper test of coverage.

Although it would appear to make little difference here which test is employed since Hicken's only authority to drive was in connection with his work, there are several reasons for rejecting this scope of employment contention:

*First*, the statute is an authorization statute and was not designed to limit the scope of coverage;

■ *Second,* the defense of *ultra vires* act belongs to the State of Colorado and not to the defendant insurance company;

■ *Third,* presumably the contract was written by defendant with full knowledge of the law. It was a consensual act on the part of defendant and it is estopped to deny that the policy covers as against members of the public whose interests are directly involved;

*Fourth,* the Colorado Safety Responsibility Act requires that a permission clause be included in all liability policies. See C.R.S. '63, 13–7–22(c).

Therefore, we could not substitute a "scope of employment" clause for the "permission" clause even if we were disposed to do so.

The remaining question is whether the use here in question was permissive or non-permissive. That Hicken had initial permission to bring the vehicle to Denver and to return it to his station at Berthoud Pass can not be questioned. The issue is whether there was an automatic cancellation of permission resulting from the earlier use of the vehicle for personal purposes, i. e., when he went to the home of Maxine Hurst; or growing out of his use of alcoholic beverage while on the job; or by reason of the delay in returning to the place of work.

Regulations of the State Highway Department do indeed prohibit the use of State vehicles for pleasure. These regulations also prohibit use of intoxicants while on the job, or particularly while driving a state vehicle. Unquestionably, Hicken violated the regulations during the day and there is indication that he had been drinking before the collision. If the proceeding here were disciplinary in nature the regulations would unquestionably come into play; but the question here is different. It is whether these regulations operate in a self-executing manner so as to void the permission which had been given.

If the accident had occurred while Hicken was beyond the limitations of the permission granted, the regulations might effectively render the policy inoperative. Although even here if the deviation was minor and the employee was returning to the work area some courts would hold that he was *not* beyond the orbit of the permission granted, or beyond the scope of employment. See State Farm Mutual Auto. Ins. Co. v. Birmingham Electric Co., 254 Ala. 256, 48 So.2d 41, and Cf. Rainwater v. Wallace (Mo. App.1943) 169 S.W.2d 450 aff'd 351 Mo. 1044, 174 S.W.2d 835. (Scope of Employment cases) See also Gibson v. Dupree, 26 Colo.App. 324, 144 P. 1133. If, on the other hand, the deviation is a substantial one and the employee would appear to have abandoned his employment mission, the use could not be permissive even without express regulations such as we have here.

■ In the case at bar the question does not appear to be even close. Hicken never wandered far in terms of space from his assigned course. The Hurst home was only a few blocks from his West Sixth Avenue route. At the time of the incident he was back on course and was headed for home base. His assigned task was to return the vehicle to Berthoud and at the time of the accident he was doing just that. To hold that the use was nonpermissive would require an adjudication that there can be no return once the deviation occurred; that Hicken's being out of time voided the insurance protection once and for all. We find no cases which so hold and it is doubtful whether there are any which go so far as to hold that redemption, so to speak, is not possible once a violation has occurred. Nor does the fact, if it be a fact, that Hicken was under the influence of alcohol, void the permission and the coverage because this fact does not place an employee outside the scope of employment. Electric Mutual Liability Co. v. Industrial Commission, Colo., 391 P.2d 677. *A fortiori,* it would not place him beyond permission.

Finally, even if scope of employment were the proper test of coverage, the result here would be the same inasmuch as Hicken was at the time engaged in serving his master, was doing work of the

kind authorized, and was within space if not time limits. See A.L.I. Restatement, §§ 228, 229.

We have examined all of the authorities cited by defendant in its brief, including Ewing v. Colorado Farm Mutual Casualty Company, 133 Colo. 447, 296 P. 2d 1040, and Fisher v. Firemen's Fund Indemnity Company (10th Cir., 1957) 244 F.2d 1942. These are not helpful to defendant's position.

It is concluded that Hicken was within the scope of permission at the time of the collision and hence he was covered by the policy issued by defendant company to the State Highway Department.

Plaintiff is directed to prepare a judgment which expresses these views and which recognizes the legal consequences of this ruling.